Carma Christensen HARSTON; Dane Harston, by Carma Christensen Harston, her Mother and Next Friend; and Paul C. Harston, by Carma Christensen Harston, his Mother and Next Friend, Appellants (Plaintiffs),

v.

## CAMPBELL COUNTY MEMORIAL HOSPITAL, Appellee (Defendant).

No. 95–90.

Supreme Court of Wyoming.

April 2, 1996.

Rehearing Denied April 23, 1996.

Walter Urbigkit of Frontier Law Center, Cheyenne, for Appellants.

John A. Sundahl and John Coppede of Sundahl, Powers, Kapp & Martin, Cheyenne, for Appellee.

J. Kent Rutledge of Lathrop & Rutledge, P.C., Cheyenne, for Amicus Curiae The Wyoming Hospital Association.

Richard Rideout of Herschler, Freudenthal, Salzburg, Bonds & Rideout, P.C., Cheyenne, for Amicus Curiae Wyoming Medical Society.

THOMAS, Justice.

The essential issue in this case addresses the scope of discovery of hospital information, documents, or other records in an action against a hospital for independent negligence in credentialing and reviewing the staff privileges of a physician, as well as the responsibility of the hospital for patient injuries. The district court limited Carma Christensen Harston's (Harston) efforts to obtain discovery with respect to incident reports relating to her care and materials relating to the appointment, reappointment, credentialing, and privileges of her treating physician. The district court then granted a summary judgment in favor of Campbell County Memorial Hospital (CCMH) after ruling that Harston, in both her individual and representative capacities, had failed to meet her burden to demonstrate any genuine issue of material fact in response to a motion for summary judgment. In resolving these issues, we revisit *Greenwood v. Wierdsma*, 741 P.2d 1079 (Wyo.1987), and hold that the trial court erred in limiting discovery. We cannot know how the information sought by the discovery would have benefited Harston in countering the motion for summary judgment but, since

Harston never had the opportunity to utilize information that should have been made available, the Order Granting Summary Judgment for Campbell County Memorial Hospital must be reversed. The case is remanded for further proceedings in accordance with this opinion.

In the Brief of Appellants, filed on behalf of Harston in both her individual and representative capacities, the issues are articulated in this way:

A. The Court erroneously denied Plaintiffs' discovery efforts by sustaining objections and granting protective orders limiting or foreclosing access by interrogatories, document production and deposition interrogation directed to obtain information, documents and testimony of witnesses from Campbell County Memorial Hospital and its employees and representatives.

B. Waiver of privilege or confidentiality should have been applied if, following Campbell County Memorial Hospital's objection to document production and interrogatories for witness testimony for which confidentiality could have properly existed, the document or information which was subjected to the objection was then used by CCMH as the underlying factual basis for tendered expert witness testimony or for stated opinions in affidavits filed to support the CCMH Motion for Summary Judgment.

C. Summary Judgment was improperly granted to Defendant, Campbell County Memorial Hospital.

1. Whether the district court properly granted summary judgment in favor of the Appellee in this alleged medical malpractice action where after having discharged its summary judgment burden, the Appellants failed to offer competent expert testimony refuting the facts established by the experts of the Appellee.

2. Whether the district court abused its discretion in denying the Appellants access to documents that were statutorily privileged from discovery, related to the credentialling, peer review and quality management functions of the hospital. In any event, assuming the district court abused

its discretion, whether the denial of said discovery constituted harmless error where the Appellants failed to designate an expert witness on these issues.

3. Whether the district court lacked subject matter jurisdiction over this action because of the Appellants' failure to submit a sufficient notice of claim in compliance with the Wyoming Governmental Claims Act.

4. Whether this Court has appellate jurisdiction over this appeal where prior to filing their notice of appeal the Plaintiffs entered into a release of all claims that included this Appellee.

In its Amicus Curiae Brief in Support of Appellee Campbell County Memorial Hospital, the Wyoming Medical Society offers this Statement of the Issue:

The issue presented here, as stated by the Appellee, Campbell County Memorial Hospital, is whether the district court properly sustained the Hospital's objections to the Plaintiff/Appellant's broad discovery requests which sought to obtain credentialing, peer review, and quality assurance documents and information regarding one of its staff physician's [sic] as well as from the Hospital itself. *Amicus* accepts this statement of the issue presented for review.

In a Brief of Amicus Curiae, The Wyoming Hospital Association, no separate statement of the issues appears. The Wyoming Hospital Association, after articulating its composition and interest in high quality medical care, sets forth its concerns about this case. It argues that the application of our statutes protecting peer review and quality management is important to it and its members, and limiting the application of those statutes, as Harston seeks to do, would have an adverse impact on its members.

Harston brought her action against CCMH seeking recovery for injuries attributable to medical treatments in the hospital and asserting the failure to develop and provide adequate protocols for emergencies during surgery; failure to develop adequately and provide requirements for competency of surgeons in surgical treatment in the event that emergencies during surgery develop; failure

to require appropriate pre-surgical testing; failure to manage, maintain, and require adequate maintenance of medical records documenting the events occurring during medical care at the hospital; and responsibility for the negligence of its employees, agents, representatives, and persons provided staff privileges. CCMH sought dismissal of Harston's claims against it because of insufficient notice under the Wyoming Governmental Claims Act, WYO.STAT. §§ 1–39–101 to –120 (1988) (as amended June 1995 Supp.), but the district court denied that motion. No appeal was taken by CCMH from that ruling. There followed extensive discovery on the part of all parties. A number of the claims against various parties were disposed of by summary judgment or settled by February 28, 1995. These events left the focus of the lawsuit on the claims by Harston against CCMH.

The discovery dispute between these parties commenced with Plaintiffs' Request for Production. In particular, Request No. 19 asked for:

Minutes and records except for information regarding any deliberation relating to consideration, decision and actions of the Campbell County Memorial Hospital Credentials Committee in considering the original accreditation of [treating physician] and any periodic extensions of hospital privileges since the original accreditation and granting of hospital privileges in Campbell County Memorial Hospital as a hospital license under the laws of the State of Wyoming not specifically designated to be privileged by statute.

CCMH objected to producing any studies, reports, statements, notes, diaries, memoranda, data, or other information regarding: any pertinent event or happening concerning Harston's care as related by an employee or agent of the hospital; the character and maintenance of medical care at the hospital; the care provided to other patients by Harston's treating physician; and the personnel, vitae and accreditation information furnished by the treating physician to the hospital to secure hospital staff privileges. The premise for the objection to the request for production was "such information is confidential and

prohibited from disclosure by Wyoming Hospital Records and Information Act, W.S. § 35–2–606, 609, and W.S. § 35–17–105; § 35–2–910, 35–2–103; W.S. § 16–4–203(a); and 42 U.S.C. §§ 11101–11152."

While it may be an oversimplification, the position of the hospital was that the CCMH credentials committee came within the definition found in Wyo.Stat. § 35–17–101 (1994) as a committee of a medical staff with the responsibility of evaluation and improvement of the quality of care rendered in a hospital. CCMH contended this information was confidential and privileged pursuant to the provisions of Wyo.Stat. § 35–17–105 (1994):

All reports, findings, proceedings and data of the professional standard review organizations is confidential and privileged, and is not subject to discovery or introduction into evidence in any civil action, and no person who is in attendance at a meeting of the organization shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the organization or as to any findings, recommendations, evaluations, opinions or other actions of the organization or any members thereof. However, information, documents or other records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of the organization, nor should any person who testifies before the organization or who is a member of the organization be prevented from testifying as to matters within his knowledge, but that witness cannot be asked about his testimony before the organization or opinions formed by him as a result of proceedings of the organization.

Acknowledging the exception of information, documents, or other records otherwise available from original sources, CCMH invoked a tandem position asserting that all such information constituted "health care information" within the definition found in Wyo.Stat. § 35–2–605(a)(vii) (1994) and was protected by the provisions of Wyo.Stat. §§ 35–2–606 and –609 (1994).

Harston filed motions to compel discovery resulting in additional objection by the hospital. In an Order on Plaintiffs' Motion to Compel Discovery, dated August 3, 1994, the court ruled:

IT IS HEREBY ORDERED that Campbell County Memorial Hospital shall provide to Plaintiff the dates of any incident reports prepared in connection with the care rendered to Plaintiff, Harston, as well as the purposes for which such reports are prepared. Campbell County Memorial Hospital shall not disclose the author of the incident report nor the subject matter of the incident report. Plaintiffs' request for the production of the incident reports is denied.

IT IS FURTHER ORDERED that all records, materials, and personnel files relating to the appointment, reappointment, credentialing and privileges of [the treating physician] in the possession of the Hospital credentialing committee, peer review or quality assurance personnel are exempt from discovery, and Plaintiffs' request for such materials is denied.

CCMH then delineated the dates of four "confidential" reports, asserting "their sole function is peer review and quality assurance." Harston also was supplied with title pages and tables of contents for two "Consultation Reports" undertaken by the University of New Hampshire Assistant Professor of Health Management and Policy. The stated purpose of these consultations and follow-up reports was "a review of medical staff and hospital quality assurance activities."

CCMH consistently denied discovery of the contents of the reports as being privileged and confidential materials. Harston continued with discovery efforts in the face of the court's order, and subpoenas were issued to various hospital employees and medical experts requesting, among other things, that all records concerning the credentialing process of Harston's treating physician, as well as all peer review and quality assurance materials regarding that physician's treatment of Harston, be produced. These materials were sought because of a statement in an affidavit filed with the court by the Chairman

of the Credentials Committee in which it was averred:

> The guidelines of the Joint Commission were adhered to in connection with the appointment, reappointment, credentialing and privileging of [treating physician]. The credentialing manual, bylaws and rules and regulations of Campbell County Memorial Hospital's Medical Staff were all followed in connection with the credentialing and re-credentialing of [treating physician]. [Treating physician] has never sat in judgment on his own credentialing, privileging or peer review. The affected physician excuses himself or herself from the review of his or her credentials.

Harston wished to test this factual conclusion and sought all materials demonstrating consideration, review, and appointment or reappointment of the treating physician.

A hearing was held on November 3, 1994, relating to Harston's efforts to obtain these materials. After listening patiently to counsel, the trial judge had this to say:

> Well, they're tough—those are clearly tough policy decisions, and the legislature has spoken to them, it seems to me.
>
> Now, if you have some independent evidence that says the Kane [a prior medical malpractice case against a treating physician] case was here, there was a screw up, the screw up was known to people at the hospital before the Harston operation and it should have gone to the credentialing committee and it didn't go to the credentialing committee, then that's one thing. And it may be that it's an unfair burden to lay that upon you to have to do it, but it seems to me that's what the statute requires.
>
> \* \* \* \* \* \*
>
> And I may be wrong on this, and the Supreme Court has never hesitated to tell me in the past that I'm wrong. I'm not sure I even agree with the policy, but I think in reading the statute that that's what the legislature intended and requires me to do. And—and you're not going to get that stuff.

In an Order Ruling on Defendant Hospital's Motion for Protective Order, to Quash Subpoenas Duces Tecum, to Prohibit Depositions, for Sanctions and Objection to Subpoenas Duces Tecum Issued for Expert Witnesses of Defendant Noticed for their Deposition, entered on December 7, 1994, the court said:

> The Court reaffirms its prior ruling of August 3, 1994, and holds that documents shall not be produced, by subpoena or otherwise, which pertain to the credentialing, appointment, reappointment or privileging files of [the treating physician], or the quality management and peer review activities of CCMH.
>
> \* \* \* \* \* \*
>
> Plaintiffs may not directly or indirectly obtain records of Campbell County Memorial Hospital or individuals associated with CCMH in privileging and credentialing processes relating to such privileging and credentialing activities and decisions.

Thereafter, the court entered an Order Granting Summary Judgment for Campbell County Memorial Hospital. In pertinent part, that order stated:

> IT IS HEREBY ORDERED that summary judgment is granted in favor of Campbell County Memorial Hospital on all issues herein. The court finds that there is no evidence of any violation of the standard of care. Plaintiffs have not demonstrated any causally connected injury or damages as a result of any acts or omissions of the nurses or employees of Campbell County Memorial Hospital. Plaintiffs have failed to meet their burden of proof, and the Court finds that there is no genuine issue of any material fact, and therefore summary judgment shall be granted.

In seeking reversal of the summary judgment, Harston urges that, after the filing of affidavits on the part of CCMH to the effect that the credentialing and review processes were followed, and there was no information to justify action, Harston was unable to produce affidavits or testimony from expert witnesses to the contrary because those witnesses had no way of knowing what occurred within the credentials committee of CCMH, nor even what information the credentials committee had before it. Harston has ap-

pealed from the summary judgment alleging error in ruling on her discovery efforts.

■ We review the discovery rulings of the trial court under an abuse of discretion standard. *Global Shipping and Trading, Ltd. v. Verkhnesaldincky Metallurgic Co.,* 892 P.2d 143 (Wyo.1995); *Farrell v. Hursh Agency, Inc.,* 713 P.2d 1174 (Wyo.1986); *Mauch v. Stanley Structures, Inc.,* 641 P.2d 1247 (Wyo.1982). *See Thomas v. Harrison,* 634 P.2d 328 (Wyo.1981); *Harris v. Grizzle,* 625 P.2d 747 (Wyo.1981). This court has utilized definitions of abuse of discretion in a number of contexts, but we consistently have ruled it can be said to mean an error of law committed by the court under the circumstances. *E.g., Pinther v. Pinther,* 888 P.2d 1250 (Wyo.1995); *Roberts v. Roberts,* 816 P.2d 1293 (Wyo.1991); *Martinez v. State,* 611 P.2d 831 (Wyo.1980). We also have said that judicial discretion "is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Martin v. State,* 720 P.2d 894, 897 (Wyo.1986). Further, we have said "the ultimate issue is whether or not the court could reasonably conclude as it did." *Martinez,* 611 P.2d at 838.

[2] We commence our analysis of the discovery ruling of the district court with a reprise of *Wierdsma,* 741 P.2d 1079. That case clearly stands for the proposition that this jurisdiction has recognized a claim of negligence against a hospital such as CCMH for failure to properly exercise its authority in admitting practitioners to staff privileges and failure to monitor the conduct of those who are granted staff privileges in a process such as that in vogue at CCMH. The hospital contends that *Wierdsma,* in which we recognized such a cause of action, has been overruled by statutory amendment since it was decided. Harston relies upon the construction of the statute we articulated in this way:

The district court relied on Secs. 35–2–602 and 35–2–604, quoted above, to deny the plaintiff discovery access to all the hospital's personnel records pertaining to Dr. Wierdsma. A careful reading of those statutes indicates that documents which detail the committee's decision-making process, opinion, perspective, or final decisional results are not discoverable. The privilege protects from discovery the records concerning the internal proceedings of the hospital committee **but does not exempt from discovery materials which the committee reviews in the course of carrying out its function, nor action which may be taken thereafter by the hospital as may be influenced by the committee decision.** In short, privileged data does not include the materials reviewed by the committee, only those documents produced by the committee as notes, reports and findings in the review process.

*Wierdsma,* 741 P.2d at 1089 (emphasis added).

It is true that, in 1991, the legislature amended the statutes by repealing §§ 35–2–601 to –604, and those provisions were replaced with §§ 35–2–605 to –617. The contention that *Wierdsma* was overruled, however, does not seem to be supported because the same language quoted in *Wierdsma* is found in the provisions of Wyo.Stat. § 35–2–609(d), with the only difference being that the word "such" has been omitted. In the definition section of the statute, the words "data" and "hospital medical staff committee" are identical to the definitions in the prior statute. Because the statute is quite similar to the prior statute, we hold that there was no legislative intent to overrule *Wierdsma.*

Furthermore, we find that the essence of the *Wierdsma* ruling was incorporated in the language of the statute relating to professional standard review organizations. Wyo. Stat. § 35–17–105 (1994) (emphasis added) provides:

All reports, findings, proceedings and data of the professional standard review organizations is confidential and privileged, and is not subject to discovery or introduction into evidence in any civil action, and no person who is in attendance at a meeting of the organization shall be permitted or required to testify in any civil action as to any evidence or other matters produced

or presented during the proceedings of the organization or as to any findings, recommendations, evaluations, opinions or other actions of the organization or any members thereof. **However, information, documents or other records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of the organization, nor should any person who testifies before the organization or who is a member of the organization be prevented from testifying as to matters within his knowledge, but that witness cannot be asked about his testimony before the organization or opinions formed by him as a result of proceedings of the organization.**

We hold *Wierdsma* retains its vitality, and the statutes relating to the professional standard review organizations and those relating to hospital records and information do not afford the absolute protection from discovery claimed by CCMH.

In what amounts to a tacit recognition of that proposition, CCMH then relies upon the confidentiality of patient records as described in Wyo.Stat. § 35–2–606 (1994) which forecloses disclosure of any hospital care information about a patient without written authorization. While Wyo.Stat. § 35–2–609 provides a laundry list of circumstances in which that disclosure may be made, an effort by a party such as Harston to obtain the information is not included there. The statute does provide:

(a) A hospital may disclose health care information about a patient without the patient's authorization to the extent a recipient needs to know the information, if the disclosure is:

\*     \*     \*     \*     \*     \*

(ii) To any other person who requires health care information for health care education or to provide planning, quality assurance, peer review or administrative, legal, financial or actuarial services to the hospital or to assist the hospital in the delivery of health care and the hospi-

tal reasonably believes that the person:
\* \* \*.

Wyo.Stat. § 35–2–609 (1994).

The resolution of the discovery issue in this case is found in the language of Wyo. Stat. § 35–2–610(a)(ix) (1994):

(a) Health care information shall not be disclosed by a hospital pursuant to compulsory legal process or discovery in any judicial, legislative or administrative proceeding unless:

\*     \*     \*     \*     \*     \*

(ix) A court has determined that particular health care information is subject to compulsory legal process or discovery because the party seeking the information has demonstrated that the interest in access outweighs the patient's privacy interest.

The trial court recognized the difficult dilemma its ruling created for Harston but, in effect, the court simply said it had no choice. We hold that the trial court does have a choice, which imposes upon it the obligation to weigh the interest of the party seeking the information against the patient's privacy interest.

Other cases from this court have defined the appropriate technique for accomplishing that duty. The materials which are sought should be submitted to the trial court so it can determine whether the interest in access of a party such as Harston to the materials reviewed by a hospital committee outweighs the privacy interest of the patient to whom those records may relate. The propriety of an *in camera* inspection is supported by this court's decisions in *First Wyoming Bank v. Continental Ins. Co.*, 860 P.2d 1064 (Wyo. 1993), and *Continental Ins. Co. v. First Wyoming Bank*, 771 P.2d 374 (Wyo.1989). We recognized the balancing function in *Sheridan Newspapers, Inc. v. City of Sheridan*, 660 P.2d 785 (Wyo.1983). Appropriate models for accomplishing the *in camera* inspection can be found in *Gale v. State*, 792 P.2d 570 (Wyo.1990) (relying upon provisions of Wyo.Stat. § 14–3–214 (July 1986 Repl.)), and *Devous v. Wyoming State Bd. of Medical Examiners*, 845 P.2d 408 (Wyo.1993), in

which we recognized that a similar process is provided in WYO.STAT. § 33–26–408(e) (1987).

We also recall the decision of this court in *Houghton v. Franscell*, 870 P.2d 1050 (Wyo.1994). In our view, the thrust of *Houghton* could logically lead the district court to conclude that materials relied upon by the committee in connection with the original extension of staff privileges to the treating physician should, at least, be subjected to the same *in camera* inspection to determine whether the interest of Harston in having that information in connection with her litigation outweighs any privacy interest asserted with respect to those documents.

With respect to the claimed error relating to discovery, we hold the trial court did commit an abuse of discretion by not accomplishing the weighing function identified in WYO.STAT. § 35–2–610(b). The question of whether, after that process is pursued, Harston will be given the benefit of any additional information that will permit her to adequately oppose the claim by CCMH of no genuine issue of material fact is problematical. Nevertheless, orderly procedure requires Harston first be given the benefit of the *in camera* inspection and the weighing process, and the summary judgment granted in favor of CCMH must be reversed so the discovery determination can be made in the trial court in an appropriate fashion.

We recall the allusion to Article 1, Section 8 of the Wyoming Constitution in *Wierdsma*, 741 P.2d at 1087. While it is not necessary to our determination of the issues in this case, the escape valve provided in WYO.STAT. § 35–2–610(a)(ix) is appropriate in light of the language of that provision of the constitution which provides, in pertinent part:

All courts shall be open and every person for an injury done to person, reputation or property shall have justice administered without sale, denial or delay.

Earlier, in a concurring opinion, the word "delay" in this constitutional provision was emphasized. *Hoem v. State*, 756 P.2d 780 (Wyo.1988) (Thomas, J., concurring). In this instance, the constitutional issue, were it posed, might well reach the question of "denial" of justice to Harston or perhaps even whether justice was administered.

We address only briefly two other matters raised by CCMH. It suggests lack of jurisdiction in this court and the trial court because of the failure to file an appropriate claim under the Wyoming Governmental Claims Act. That issue was raised in the trial court, and a ruling adverse to CCMH was made. In the absence of an appeal by CCMH from that ruling, it remains the law of the case and is not open for consideration by this court. In a similar vein, CCMH suggests that, by settling with other parties, Harston released CCMH with respect to the claim for negligent credentialing. We cannot discern from the record that this issue was raised in the trial court and, consequently, we will not consider it on appeal.

The Order Granting Summary Judgment for Campbell County Memorial Hospital entered in the trial court is reversed, and the case is remanded to the trial court for further proceedings in accordance with this opinion.